PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BETHEL WORLD OUTREACH
MINISTRIES, of Montgomery
County,

*Plaintiff-Appellant,*

v.

MONTGOMERY COUNTY COUNCIL;
MONTGOMERY COUNTY, MARYLAND,

*Defendants-Appellees.*

No. 11-2176

UNITED STATES OF AMERICA; CHRIST
INTERNATIONAL MINISTRIES; FAMILIES
ACROSS AMERICA, INC.; GRACE
MISSIONARY SOCIETY; THE BECKET
FUND FOR RELIGIOUS LIBERTY,

*Amici Supporting Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge.
(8:08-cv-01195-PJM)

Argued: December 4, 2012

Decided: January 31, 2013

Before MOTZ, FLOYD, and THACKER, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Floyd and Judge Thacker joined.

---

**COUNSEL**

**ARGUED:** Roman Paul Storzer, STORZER & GREENE, PLLC, Washington, D.C., for Appellant. Angela Macdonald Miller, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amici Supporting Appellant. Patricia Prestigiacomo Via, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellees. **ON BRIEF:** Robert L. Greene, STORZER & GREENE, PLLC, Washington, D.C., for Appellant. Marc P. Hansen, County Attorney, Edward B. Lattner, Division Chief, Division of Human Resources & Appeals, Paul F. Leonard, Jr., Associate County Attorney, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellees. Jocelyn Samuels, Principal Deputy Assistant Attorney General, Dennis J. Dimsey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the United States, Amicus Supporting Appellant. Eric C. Rassbach, Lori H. Windham, THE BECKET FUND FOR RELIGIOUS LIBERTY, Washington, D.C., for Christ International Ministries, Families Across America, Inc., Grace Missionary Society, and The Becket Fund for Religious Liberty, Amici Supporting Appellant.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Bethel World Outreach Ministries brought this action asserting that Montgomery County's zoning regulations, which prevented Bethel from constructing a church, violated the Religious Land Use and Institutionalized Persons Act

("RLUIPA"), the United States Constitution, and the Maryland Declaration of Rights. The district court granted summary judgment to the County on all claims. For the reasons that follow, we reverse the judgment of the district court as to Bethel's RLUIPA "substantial burden" claim, affirm in all other respects, and remand for further proceedings consistent with this opinion.

I.

Bethel, a Christian church, owns a place of worship in Silver Spring, Maryland, and rents a satellite facility in Gaithersburg, Maryland. Both Silver Spring and Gaithersburg are located in Montgomery County.

Bethel's Silver Spring church seats approximately 450 people at one time and the Gaithersburg facility seats approximately 300; Bethel's total weekly attendance at all services is about 1500. To accommodate its congregation Bethel must hold four services every Sunday—three in Silver Spring and one in Gaithersburg. The number of services restricts their length, and requires that Communion not be held until after the services.

Time and space limitations also sometimes require Bethel to cut short its important "Altar Call" practice, in which attendees may publicly dedicate their lives to Christ, join the church, or request specific prayers. After the service, the director of Altar Call traditionally conducts conversations with those who have come forward regarding their spiritual beliefs. Because the church itself lacks facilities to accommodate these conversations, the director must use a small, partitioned area in the visitor center.

Even with four services each Sunday, Bethel faces overcrowding, and ushers must sometimes prevent worshipers from entering the sanctuary. Bethel also lacks facilities for other programs, including religious education, health educa-

tion, and various counseling services. And because adults use all available classrooms, Bethel is unable to provide programs exclusively for youths.

For all of these reasons, in 2004 Bethel purchased a 119-acre property on Brink Road, also in Montgomery County. Bethel planned to build a new, larger church on this property.

The Brink Road property is located within a 93,000-acre area that the County designated in 1980 as an agricultural reserve. To preserve the environmental and aesthetic benefits of open spaces in the agricultural reserve, the County zoned most of it as a "rural density transfer zone" subject to a transferable development rights system. Under that system, developers can purchase rights from landowners in the rural density transfer zone to build in other areas of the County. The property of the landowner who sells the development rights is then subject to an easement, which restricts the density of residential development permitted on that property. Prior to 2007, the easements did not affect institutional use of property in the zone, so a church was a permitted use on Bethel's property.

Under the County's water and sewer plan, however, the County generally did not provide public service in rural density transfer zones, though it did consider case-by-case exceptions to that policy. Before 2005, the County's private institutional facilities policy provided a means by which institutional users, including religious institutions like Bethel, could request amendments to the County's water and sewer plan. In 2001, Bethel's predecessor on the Brink Road property, Farm Development Company, LLC, requested such an amendment, which would have provided it with public water and sewer service, and allowed it to build four 1000-seat churches.

At least partially in response to this request, in 2003 the County began reviewing its private institutional facilities policy and considered changes that would have prevented Farm

Development and other institutional users in the rural density transfer zone from gaining access to the public water and sewer system. The County did not at that time implement any such changes, but indicated that further review of the policy would be needed.

In 2004, after purchasing the Brink Road property, Bethel substituted itself for Farm Development on the request for public water and sewer service. Bethel planned to build a 3000-seat church, a school, a daycare building, a social hall, and offices on the property. In November 2005, the Council denied Bethel's request and in the same meeting approved an amendment to the water and sewer plan prohibiting public water and sewer service to private institutional facilities in the rural density transfer zone.

In January 2006, Bethel filed a petition for administrative mandamus in state court, challenging the denial of its application for public water and sewer service as unlawful, arbitrary, capricious, unsupported by substantial evidence, and violative of the Maryland Declaration of Rights and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Two years later, the state court granted summary judgment to the County; the Court of Special Appeals later affirmed. *See Bethel World Outreach Church v. Montgomery Cnty.*, 967 A.2d 232 (Md. Ct. Spec. App. 2009).

While Bethel's state court action was pending, the County Council considered the application of another religious institution, Derwood Bible Church, for approval of the private well and septic system necessary to build a 1500-seat church in the rural density transfer zone.[1] In February 2006, the

---

[1] With a private well and septic system, a property owner provides for its own water and sanitary needs and does not require access to the public water and sewer system. Montgomery County, however, still requires an owner to obtain approval from the County for large private systems.

Council approved an amendment to the County's water and sewer plan that restricted the size of new private well and septic systems in rural density transfer zones. A month later, the County denied Derwood's request because Derwood's proposed private well and septic system exceeded the maximum capacity permitted by this amendment, known as the Knapp Cap.

Because the County had earlier (in November 2005) amended its water and sewer plan to prevent private institutional facilities from obtaining access to the *public* water and sewer system, the Knapp Cap's restriction on private systems effectively imposed a size limitation on new private institutional facilities in the rural density transfer zone. In response to this limitation, Bethel modified its plan in order to comply with the Knapp Cap, and in January 2007 applied for a private well and septic system to support the construction of a smaller, 800-seat church.

In October 2007, while that application was pending, the County Council adopted an amendment to its zoning provisions, ZTA 07-07, which prohibits a landowner from building a private institutional facility on any property subject to a transferable development rights easement. Because Bethel's property is subject to such an easement, ZTA 07-07 bars it from building even the smaller 800-seat church. In April 2008, the County "deferred" Bethel's well and septic application pending submission of a proposed use consistent with ZTA 07-07 (*i.e.*, agriculture or single family homes); Bethel's appears to have been the only pending application effectively denied based on ZTA 07-07.

A month later, in May 2008, Bethel filed this action in federal court alleging that ZTA 07-07 and the "deferral" of its application for a well and septic system violated its rights under RLUIPA, the First and Fourteenth Amendments, and the Maryland Declaration of Rights. After completion of discovery, the County moved for summary judgment. The dis-

trict court conducted a hearing and then granted summary judgment to the County on all claims. Bethel noted a timely appeal. We review the district court's grant of summary judgment *de novo. Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 174 (4th Cir. 2009).[2]

## II.

Bethel's principal appellate argument is that the County violated the substantial burden provision of RLUIPA. *See* 42 U.S.C. § 2000cc(a)(1). That provision prohibits the imposition or implementation of any land use regulation in a manner that:

> imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution —

---

[2]The County briefly argues that the 2007 state court judgment constitutes collateral estoppel or *res judicata*, barring this federal action. This argument fails. Collateral estoppel, which only bars relitigation of issues actually resolved in a previous suit, *see Colandrea v. Wilde Lake Cmty. Ass'n*, 761 A.2d 899, 907 (Md. 2000), has no applicability to this case. For the state court action did not address, let alone resolve, the issues raised here, *i.e.*, whether the County violated the law by passing ZTA 07-07 and deferring Bethel's application for a private well and septic system. Although *res judicata* does bar relitigation of all claims that *could* have been resolved in an earlier action, *see Alvey v. Alvey*, 171 A.2d 92, 94 (Md. 1961), it too is inapplicable to the present action. This is so because the County enacted ZTA 07-07 in October 2007, more than a year *after* Bethel initiated its state court action; to avoid *res judicata*, a plaintiff need not "expand its suit in order to add a claim that it could not have asserted at the time suit was commenced." *NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*, 105 F.3d 72, 78 (2d Cir. 1997); *see also Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 774 & n.3 (4th Cir. 1991); *Howard Cnty. v. Eberhart*, 473 A.2d 509, 513 (Md. Ct. Spec. App. 1984).

> (A) is in furtherance of a compelling gov-
> ernmental interest; and
>
> (B) is the least restrictive means of further-
> ing that compelling governmental interest.

*Id.*[3] "Religious exercise" includes "[t]he use, building, or con-
version of real property for the purpose of religious exercise."
*Id.* § 2000cc–5(7).

### A.

Before turning to the merits of Bethel's substantial burden
claim, we note that the district court's substantial burden anal-
ysis rested on two misunderstandings of the appropriate legal
standards. We address these in turn.

### 1.

First, in considering whether the County imposed a sub-
stantial burden on Bethel's religious exercise, the district
court erred in applying, without any modification for the land
use context, the standard applicable in RLUIPA institutional-
ized persons cases.

In the institutionalized persons context, we have defined a
substantial burden on religious exercise as one in which "a
state or local government, through act or omission, 'put[s]

---

[3]This provision applies only when the substantial burden (1) is imposed
in a program that receives federal assistance, *or* (2) affects interstate com-
merce, *or* (3) is imposed in the implementation of a land use regulation
involving an individualized governmental assessment. *See* 42 U.S.C.
§ 2000cc(a)(2)(A)-(C). Contrary to the County's suggestion, Bethel has
established at least one of these requirements since ZTA 07-07 prevents
Bethel from building a church on its property, an activity that clearly
affects interstate commerce. *See, e.g.*, *Westchester Day Sch. v. Vill. of
Mamaroneck*, 504 F.3d 338, 354 (2d Cir. 2007) (noting that "commercial
building construction is activity affecting interstate commerce").

substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). We borrowed this standard from the Supreme Court's language in *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 718 (1981), a case in which the Court struck down as violative of the First Amendment the Government's denial of unemployment benefits to a Jehovah's Witness who quit his job in a war materials plant because of his religious beliefs. *See* 450 U.S. at 707-18. This standard is entirely appropriate in the institutionalized persons context, since the Government can employ its absolute control over prisoners (like its absolute control over eligibility for unemployment benefits) to pressure a person to violate his religious beliefs.

But the Government lacks comparable control in the land use context. Even government action preventing a religious organization from building a church will rarely, if ever, force the organization to violate its religious beliefs, because the organization can usually locate its church elsewhere. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348-49 (2d Cir. 2007) ("[I]n the context of land use, a religious institution is not ordinarily faced with the . . . dilemma of choosing between religious precepts and government benefits."). Thus, requiring a religious organization to prove that a land use regulation pressured it to violate its beliefs would be tantamount to eliminating RLUIPA's substantial burden protection in the land use context. It seems very unlikely that Congress intended this.

We note that no appellate court has applied an unmodified *Lovelace*-like standard in the land use context. That is, none has required a plaintiff asserting that a land use regulation imposes a substantial burden in violation of RLUIPA to prove that the regulation pressures the plaintiff to violate its beliefs. Rather, every one of our sister circuits to have considered the question has held that, in the land use context, a plaintiff can succeed on a substantial burden claim by establishing that a

government regulation puts substantial pressure on it to modify its behavior. *See Westchester Day Sch.*, 504 F.3d at 349 ("[In the land use context,] courts appropriately speak of government action that directly *coerces* the religious institution to change its behavior . . . ." (emphasis in original)); *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988-89 (9th Cir. 2006) ("[A] substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise." (internal quotation marks omitted)); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) ("[A] substantial burden is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." (internal quotation marks omitted)); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("[A] land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise—including the use of real property for the purpose thereof within the regulated jurisdiction generally—effectively impracticable."). We believe that this standard best accords with RLUIPA.

## 2.

The district court also erred in requiring Bethel to show that the County "targeted" it in order to succeed on its substantial burden claim. *See* Mot. Hr'g Tr. at 146, No. PJM-08-1195 (D. Md. Sept. 26, 2011) ("There's no way in which the court can find that [Bethel has] been targeted . . . this was a generic decision that . . . preexisted even the presence of the church in the county.").

Of course, we recognize that when a plaintiff challenges an apparently neutral law of general applicability as violative of the *First Amendment*, it must demonstrate that the statute targets its religious beliefs or practices. *See Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) ("[T]he

right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." (internal quotation marks omitted)); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) ("Although a law targeting religious beliefs as such is never permissible, if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral . . . .").

The district court undoubtedly drew on this First Amendment principle in requiring Bethel to demonstrate that the County targeted it. But RLUIPA's history indicates that Congress intended that the statute do more than merely codify First Amendment jurisprudence. *See Madison v. Riter*, 355 F.3d 310, 314-315 (4th Cir. 2003) (explaining RLUIPA's history); *see also Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009) (finding that RLUIPA protects an institutionalized person from a substantial burden on his religious exercise even when the burden is imposed by a neutral and generally applicable policy). Moreover, RLUIPA's statutory language and structure reflect this intent.

First, RLUIPA's substantial burden provision says nothing about targeting. Rather, it simply forbids government from imposing a substantial burden on religious exercise unless the Government demonstrates that it has used the least restrictive means of furthering a compelling governmental interest; that is, unless the governmental action satisfies strict scrutiny. 42 U.S.C. § 2000cc(a)(1).

Moreover, as Bethel points out, RLUIPA contains a separate provision forbidding discrimination. *See id.* § 2000cc(b)(2) (prohibiting government from imposing or implementing "a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination"). In construing a statute, a court must presume that Congress did not intend to enact superfluous provisions. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*,

501 U.S. 104, 112 (1991) ("[O]f course we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof."). Requiring a religious institution to show that it has been targeted on the basis of religion in order to succeed on a substantial burden claim would render the nondiscrimination provision superfluous.

Therefore, it seems clear that the substantial burden provision protects against non-discriminatory, as well as discriminatory, conduct that imposes a substantial burden on religion. Accordingly, a religious organization asserting that a land use regulation has imposed a substantial burden on its religious exercise need not show that the land use regulation targeted it.[4]

With these principles in mind, we turn to the merits of Bethel's substantial burden claim.

## B.

Initially, we consider whether Bethel has presented evidence of a triable issue of fact as to whether the County has imposed a substantial burden on its religious exercise. When

---

[4]This is not to say that a religious organization can state a RLUIPA substantial burden claim simply by alleging that it received an adverse land use ruling. Certainly, Congress did not intend to permit religious organizations to exempt themselves from neutral zoning provisions. *See* 146 Cong. Rec. S7776 (daily ed. July 27, 2000) (joint statement of Sens. Hatch and Kennedy). Thus, a court will likely find that a religious organization has not pled a substantial burden claim merely by alleging that it moved to an area in which generally applicable zoning provisions bar construction of churches and then was denied exemption from the zoning provisions to build its church. *See, e.g.*, *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 850-52 (7th Cir. 2007). But this is not such a case. Here, the County permitted churches in the area at the time Bethel bought its property, and Bethel sought to build a church long before the County passed an ordinance, ZTA 07-07, prohibiting its construction. Moreover, although ZTA 07-07 is neutral and generally applicable on its face, it is not clear that it has thwarted the building plans of any secular institution.

a religious organization buys property reasonably expecting to build a church, governmental action impeding the building of that church may impose a substantial burden. *See Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) ("[O]nce the organization has bought property reasonably expecting to obtain a permit, the denial of the permit may inflict a hardship on it."); *see also Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766, 786-87 (D. Md. 2008), *aff'd by unpublished opinion*, 368 F. App'x 370 (4th Cir. 2010). This is so even though other suitable properties might be available, because the "delay, uncertainty, and expense" of selling the current property and finding a new one are themselves burdensome. *See Saints Constantine & Helen Greek Orthodox Church v. City of New Berlin*, 396 F.3d 895, 899–901 (7th Cir. 2005).

The County contends that Bethel could not reasonably expect to build a church when it purchased the Brink Road property because at that time the County had long been considering changes to its private institutional facilities policy to limit such institutional uses. Further, the County argues, "[t]here were no guarantees that Bethel would get all the necessary approvals to build what it wanted." Appellee's Br. at 50. But the County does not contest that it permitted churches in the rural density transfer zone at the time Bethel bought the property, and modern zoning practices are such that landowners are rarely *guaranteed* approvals. Bethel has at the very least offered evidence raising a question of material fact as to whether it had a reasonable expectation of being able to build a church.

Moreover, we find it significant that the County has completely prevented Bethel from building any church on its property, rather than simply imposing limitations on a new building. *See, e.g.*, *Westchester Day Sch.*, 504 F.3d at 352 (considering as a factor in its substantial burden analysis whether village's denial of school's application was conditional or absolute); *Guru Nanak*, 456 F.3d at 991-92 (finding

substantial burden where county's two denials of Guru Nanak's application significantly lessened the prospect of being able to build a temple in the future).

Although the County suggests that Bethel's burden is not substantial because the organization already owns one facility and rents another, Bethel has presented considerable evidence that its current facilities inadequately serve its needs. Specifically, insufficient space forces Bethel to hold four services every Sunday, and to shorten services, interfering with Communion and the church's "Altar Call" practice. Bethel's present facilities are overcrowded, requiring ushers to turn people away from services and limiting Bethel's ability to offer various programs. Bethel's pastor testified that the lack of adequate facilities creates a sense of disunity because the congregation is divided into so many separate services.

If Bethel's proffered evidence is believed, a fact finder could certainly conclude that Bethel's current facilities do not adequately serve its religious purposes, and that the planned 800-seat church would alleviate Bethel's burden. *See Westchester Day Sch.*, 504 F.3d at 345, 352-53 (finding a substantial burden where village denied religious school's application for a special use permit to expand, as existing facility lacked sufficient space to meet school's needs); *Reaching Hearts*, 584 F. Supp. 2d at 786-87 (upholding jury verdict for religious congregation on substantial burden claim where current leased facility was too small to accommodate congregation, congregation could not construct a religious school, and ability to hold activities was limited). Viewing the facts in the light most favorable to Bethel, we must conclude that the district court erred in holding as a matter of law that the County did not impose a substantial burden on Bethel's religious exercise.

But of course a governmental regulation violates RLUIPA by imposing a substantial burden on religious exercise *only* if the regulation fails to satisfy strict scrutiny. *See* 42 U.S.C.

§ 2000cc(a)(1). That is, if the County has offered undisputed facts showing that it has used the least restrictive means of furthering a compelling governmental interest, we must nonetheless uphold the district court's grant of summary judgment.

The County maintains that it has done this. It points to its interest in preserving agricultural land, water quality, and open space and managing traffic and noise in the rural density transfer zone. Assuming, without deciding, that this constitutes a compelling interest, the County has failed to demonstrate that, as a matter of law, ZTA 07-07 is the least restrictive means of furthering that interest. The County has presented no evidence that its interest in preserving the integrity of the rural density transfer zone could not be served by less restrictive means, like a minimum lot-size requirement or an individualized review process. We therefore reverse the district court's grant of summary judgment to the County on Bethel's substantial burden claim.

### III.

We can more quickly resolve Bethel's remaining arguments.

### A.

In addition to its substantial burden claim, Bethel asserts that the district court erred in granting the County summary judgment on two other RLUIPA claims—its RLUIPA discrimination claim and its RLUIPA unreasonable limitation claim.

### 1.

The nondiscrimination provision of RLUIPA provides: "No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the

basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2).

ZTA 07-07 is facially neutral: it applies to all private institutional facilities, not just churches or other religious structures. Bethel maintains, however, that it has offered extensive evidence proving that the County adopted ZTA 07-07 because of its hostility to large churches, and this violated RLUIPA's nondiscrimination provision.

Bethel did produce evidence indicating that County residents opposed Bethel's proposed facilities and also opposed the large sanctuary proposed by Derwood Bible Church. Bethel further points to the undisputed sequence of events leading up to the County's adoption of ZTA 07-07 as evidence of discrimination. *See Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 819 (4th Cir. 1995) (recognizing the sequence of events leading up to a challenged decision as probative of whether the decision-making body was motivated by discriminatory intent (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977))). The County admits that it began reviewing its private institutional facilities policy in part in response to the request submitted by Bethel's predecessor to build four 1000-seat churches. The County also admits that it deferred Bethel's application for public water and sewer service while it considered, and ultimately adopted, an amendment to the water and sewer plan prohibiting public water and sewer service to private institutional facilities in the rural density transfer zone. Further, it is undisputed that the County adopted the Knapp Cap while Derwood Bible Church's application for a private well and septic system was pending, and then denied Derwood's application because it did not comply with the Knapp Cap. Finally, the County enacted ZTA 07-07 while Bethel's application for a private well and septic system was pending.

This evidence could certainly support an inference that the County took the measures it did to prevent Bethel and Der-

wood from going forward with their building plans. Bethel, however, has failed to put forth any evidence that the County took those measures because Bethel and Derwood are religious organizations. Rather, the County and the residents involved in the process consistently expressed concern with the *size* of the proposed facilities, which they considered incompatible with the character of the agricultural reserve. And Bethel has not presented evidence that the concern with size was pretextual by, for example, pointing to other facilities of the same size in the rural density transfer zone. *Cf. Reaching Hearts*, 584 F. Supp. 2d at 781-82 (upholding jury's finding of intentional discrimination under the Equal Protection Clause where county departed from its normal procedures in denying Reaching Hearts' application to build a church, Reaching Hearts' application was the only one rejected out of the twenty-eight presented and the only one that proposed a church, and statements of community and county council members indicated that they did not want another church because existing churches were not "an asset to the community").

Because Bethel has failed to offer evidence that the County discriminated against it on the basis of religion, we must affirm the district court's grant of summary judgment to the County on Bethel's RLUIPA nondiscrimination claim.[5]

---

[5]Bethel also unconvincingly contends that the County discriminated *between* religious denominations, pointing to the County's approval of the Archdiocese of Washington's 2001 water and sewer category change request, and conceptual approval of the Archdiocese's preliminary plan to build a church and associated school. But because the Archdiocese never went forward with plans to build anything other than a cemetery on its property, it cannot be considered a similarly situated entity for purposes of proving discriminatory treatment. *See Church of Scientology of Ga., Inc. v. City of Sandy Springs*, 843 F. Supp. 2d 1328, 1361 (N.D. Ga. 2012) ("The application of a neutral ordinance may violate RLUIPA's nondiscrimination provision if it differentially treats similarly situated religious assemblies on the basis of denomination.").

## 2.

Bethel's unreasonable limitation claim fares no better. RLUIPA's unreasonable limitation provision provides that government shall not impose or implement a land use regulation that "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(B). While a religious institution may succeed on a substantial burden claim when government defeats its reasonable expectation of being able to build on a particular property, RLUIPA's unreasonable limitation provision prevents government from adopting policies that make it difficult for religious institutions to locate anywhere within the jurisdiction. *See Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 990-92 (7th Cir. 2006) (regulation requiring special use permit to locate in a residential district left religious assemblies with "a reasonable opportunity to build within the Village").

ZTA 07-07 merely prohibits religious assemblies, along with other institutional uses, on properties in the rural density transfer zone that are encumbered by transferable development rights easements. Bethel has failed to produce any evidence suggesting that religious organizations are left without a reasonable opportunity to build elsewhere in the County. Thus, we hold that Bethel's unreasonable limitation claim fails as a matter of law and the district court did not err in granting summary judgment to the County on this claim.

## B.

Finally, Bethel contends that the district court erred in granting summary judgment to the County on Bethel's constitutional claims, *i.e.*, Bethel's contentions that the County violated its free exercise and equal protection rights under the United States Constitution and the Maryland Declaration of Rights.

We follow the Maryland courts in interpreting the free exercise and equal protection provisions of the Maryland Declaration of Rights *in pari materia* with their federal counterparts. *See, e.g.*, *Evans v. State*, 914 A.2d 25, 67 (Md. 2006) (equal protection); *Stover v. Prince George's Cnty.*, 752 A.2d 686, 695 (Md. Ct. Spec. App. 2000) (free exercise).

Under the Free Exercise Clause, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye*, 508 U.S. at 531. But "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Id.* at 533. On its face, ZTA 07-07 is a neutral law of general applicability, and, as discussed above, Bethel has failed to present evidence tending to show that the object of ZTA 07-07 was to burden practices because of their religious motivation.

Thus, in resolving Bethel's free exercise challenge we apply rational basis scrutiny, which requires merely that the law at issue be "rationally related to a legitimate governmental interest." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 284 (3d Cir. 2009); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 292 (5th Cir. 2001). Bethel cannot show that ZTA 07-07 is not rationally related to a legitimate governmental interest. Limiting the development of the agricultural reserve is a legitimate interest, and ZTA 07-07 furthers that interest by prohibiting institutional uses on properties encumbered by transferable development rights easements. *See Sylvia Dev. Corp.*, 48 F.3d at 821 n.3 ("[I]t is presumably a legitimate governmental purpose to preserve the rural nature of a community and to maintain its aesthetic and functional characteristics through zoning requirements."). Contrary to Bethel's assertions, the distinction ZTA 07-07 draws between property owners that have sold their transferable development rights and those that have

not is rational. Therefore, the district court did not err in granting summary judgment to the County on Bethel's free exercise claim.

Nor did the district court err in granting summary judgment to the County on Bethel's equal protection claim. Bethel has failed to present evidence that the County discriminated against it on the basis of religion. Bethel's "class of one" claim must fail because the County's actions survive rational basis scrutiny. *See generally Willis v. Town of Marshall*, 426 F.3d 251, 263 (4th Cir. 2005).

## IV.

For the reasons set forth above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*