**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1450

JESUS CHRIST IS THE ANSWER MINISTRIES, INC.; REV. LUCY WARE,

Plaintiffs − Appellants,

v.

BALTIMORE COUNTY, MARYLAND; BOARD OF APPEALS OF
BALTIMORE COUNTY, MARYLAND,

Defendants – Appellees.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellants.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge. (1:17-cv-03010-RDB)

Argued: October 31, 2018                           Decided: February 7, 2019

Before NIEMEYER, AGEE, and DIAZ, Circuit Judges.

Vacated and remanded by published opinion. Judge Diaz wrote the opinion, in which
Judge Niemeyer and Judge Agee joined.

**ARGUED:** Roman P. Storzer, STORZER & ASSOCIATES, P.C., Washington, D.C.,
for Appellants. James Joseph Nolan, Jr., Paul M. Mayhew, BALTIMORE COUNTY

OFFICE OF LAW, Towson, Maryland, for Appellees. John Matthew Gore, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States of America. **ON BRIEF:** Sieglinde K. Rath, STORZER & ASSOCIATES, P.C., Washington, D.C.; Lawrence E. Schmidt, SMITH GILDEA & SCHMIDT LLC, Towson, Maryland, for Appellants. Michael E. Field, County Attorney, R. Brady Locher, Assistant County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees. Tovah R. Calderon, Katherine E. Lamm, Appellate Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States of America.

———————————

DIAZ, Circuit Judge:

Jesus Christ Is the Answer Ministries, Inc. (the "Church") and Reverend Lucy Ware appeal the dismissal of their claims against Baltimore County and the Board of Appeals of Baltimore County. The district court dismissed Plaintiffs' suit for failure to state a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, the Free Exercise Clause, the Equal Protection Clause, and Article 36 of the Maryland Declaration of Rights. For the reasons that follow, we vacate and remand for further proceedings.

## I.

## A.

Jesus Christ is the Answer Ministries, Inc. is a nondenominational Christian church founded in Baltimore in 1997 by Reverend Lucy Ware.[1] The Church describes itself as evangelical and multicultural. It has associated churches in Kenya and the Seychelles, and many of the Church's congregants were born in Africa. Reverend Ware was born in Kenya, where she was active in her family church until moving to the United States.

The Church has struggled to secure an adequate house of worship, and this has impeded its religious mission. This lawsuit arises from Ware's unsuccessful efforts to

---

[1] Our recitation of the facts is based on the allegations in Plaintiffs' complaint, which we accept as true at the motion to dismiss stage. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

obtain County approval to operate a church on property that she purchased for that purpose in 2012 (the "Property").

The Property consists of 1.2 acres of land with a building previously used as a dwelling. It is zoned under the Baltimore County Zoning Regulations ("BCZR") as "Density Residential 3.5."

In this zone, churches are permitted as of right subject to certain conditions, including that parking lots and structures are (1) set back 75 feet from tract boundaries, and (2) separated from adjacent lots by a 50-foot landscaped buffer. BCZR §§ 1B01.1.A.3, 1B01.1.B.1.e. These conditions, however, don't apply to new churches whose site plans have been approved after a public hearing finding that compliance with the conditions will be maintained "to the extent possible," and that the plan "can otherwise be expected to be compatible with the character and general welfare of the surrounding residential premises." *Id.* § 1B01.1.B.1.g.(6).

Before Ware purchased the Property, her realtor advised her that a church was a permitted use on the Property.

After buying the Property, Ware made improvements to the building and parking lot and held a church service and cookout. Neighbors complained to the County, and a County inspector notified Ware that she couldn't use the Property as a church unless she complied with applicable zoning requirements.

Ware filed a petition with the County to approve use of the Property as a church. The petition proposed a buffer and setback of zero feet, seeking complete relief from the zoning requirements. It also sought variances from parking requirements. The County

4

Director of the Department of Planning did not oppose the petition, "provided a landscape and signage plan is submitted to the department for review and approval." J.A. 19 ¶ 105. A hearing was held before an Administrative Law Judge ("ALJ"). Neighbors who opposed the petition attended and participated.

At the hearing, several neighbors made comments displaying open hostility to Ware and the Church. These comments included: (1) "dancing and hollering like they back at their home back in Africa somewhere"; (2) "[s]he can come over here from Africa . . . branch out from another church and put all of this in our neighborhood"; and (3) "[t]hey were out here dancing like from Africa. We don't have that in our block." J.A. 19 ¶ 108. Since the hearing, neighbors have subjected the Church and its members to a sustained barrage of harassment, including racial slurs. The Property has also been subject to vandalism and theft.

The ALJ recommended denying Ware's petition. Ware appealed this recommendation to the Board of Appeals. The Board denied the petition, finding that "the proposed Church does not even minimally comply" with the applicable zoning requirements and that the plan would not be compatible with "the character or general welfare of the surrounding homes which homes are occupied by the [neighbors] who testified." J.A. 57. The Board's decision was affirmed by the Circuit Court for Baltimore County and the Court of Special Appeals of Maryland. *Ware v. People's Counsel*, 117 A.3d 628 (Md. Ct. Spec. App. 2015).

While the first petition was pending appeal, Ware filed a second petition. This new petition included a modified site plan that (1) moved the parking lot to increase the

5

setback to 55–72.7 feet and the buffer to 50 feet, and (2) did not seek any parking variances. The new petition also differed from its predecessor in that it sought approval not only under the zoning provision governing new churches, but also under a separate provision governing existing churches.

The People's Counsel (a county official) initially sought dismissal of the new petition, on the ground that it sought essentially the same relief as its predecessor. The neighbors who opposed the first petition adopted the People's Counsel's motion to dismiss. But the People's Counsel subsequently withdrew his motion based on the differences between the two petitions. Nevertheless, the neighbors continued to pursue dismissal. The Board granted the motion to dismiss, holding that the new petition was barred by res judicata and collateral estoppel.

B.

Ware and the Church then filed suit in federal district court, alleging that the Board's dismissal of the second petition violated RLUIPA's substantial burden and nondiscrimination provisions, the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, and Article 36 of the Maryland Declaration of Rights, which protects freedom of religion at the state level. The district court dismissed the complaint for failure to state a claim. This appeal followed.

II.

We review the district court's dismissal order de novo, accepting as true the facts alleged in the complaint and drawing all reasonable inferences in Plaintiffs' favor, to

determine whether the complaint contains facts sufficient to state a claim that is "plausible on its face." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A.

We begin with Plaintiffs' claim that Defendants substantially burdened their religious exercise, in violation of RLUIPA, by dismissing the second petition.[2] We agree with the Plaintiffs that the district court erred in dismissing this claim.

RLUIPA prohibits land use regulations that impose a "substantial burden" on religious practice, unless they are the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1). A substantial burden exists where a regulation "puts substantial pressure on [the plaintiff] to modify its behavior." *Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548, 556 (4th Cir. 2013).

As relevant here, land use regulations can substantially burden religious exercise where an organization acquires property expecting to use it for a religious purpose but is

---

[2] Defendants argue, for the first time on appeal, that the Church can't bring an RLUIPA claim because it doesn't own the Property (Ware does). This argument doesn't implicate any jurisdictional issue such as the Church's constitutional standing. Instead, it concerns whether a regulation affecting the Church fits within RLUIPA's definition of "land use regulation." *See* 42 U.S.C. § 2000cc-5(5). Because Defendants' argument doesn't call our subject matter jurisdiction into question or implicate "exceptional circumstances," we decline to consider it for the first time on appeal. *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993).

7

prevented from doing so by the application of a zoning ordinance. In such a case, two questions are usually relevant to determining whether RLUIPA has been violated.

First, is the impediment to the organization's religious practice substantial? The answer will usually be "yes" where use of the property would serve an unmet religious need, the restriction on religious use is absolute rather than conditional, and the organization must acquire a different property as a result. *See Bethel*, 706 F.3d at 557–58.

Second, who is responsible for the impediment—the government, or the religious organization? In answering this question, we have considered whether the organization had a "reasonable expectation" of religious land use, *see Bethel*, 706 F.3d at 558, and whether the burden faced by the organization is "self-imposed," *see Andon, LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016).

In this case there is little dispute that the impediment is substantial, since the Church is barred from using the Property, so the district court sensibly focused on the second question: Are Plaintiffs responsible for their present inability to use the Property as a church? But in addressing this question, the court wrongly emphasized Plaintiffs' purported "failure to exercise due diligence before acquiring and altering the property" and their "subsequent proposal [in Ware's first petition] of a site plan that disregarded the zoning requirements." *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore County*, 303 F. Supp. 3d 378, 396 (D. Md. 2018). The first of these supposed failings is irrelevant to whether the zoning regulations in fact authorize Plaintiffs to use the Property as a church. And the second is irrelevant to whether Plaintiffs were responsible for the

8

dismissal of Ware's *second* petition, which is what now stands in the way of their religious practice.

Ware sufficiently alleged that she had a reasonable expectation of using the Property as a church. Her realtor told her that such a use was permitted on the Property. This advice was of course correct because churches are "permitted as of right," provided that their site plans comply "to the extent possible with [applicable] requirements" and can "otherwise be expected to be compatible with the character and general welfare of the surrounding residential premises." BCZR §§ 1B01.1.A.3, 1B01.1.B.1.g.(6). Ware was justified in believing that she could satisfy these broadly and permissibly phrased conditions, especially given that the zoning regulations permit churches as of right.

Ware's efforts to meet the zoning conditions were frustrated, however, when the Board dismissed her second petition. As the district court recognized, the second petition was based on a site plan that substantially differed from and attempted to address the shortcomings of its predecessor. The Board failed to recognize these differences when it dismissed the petition based on res judicata and collateral estoppel, relying on the faulty premise that the two petitions sought essentially the same relief.

The district court declined to dismiss Plaintiffs' suit on grounds of res judicata and collateral estoppel, but nonetheless determined that the Board correctly dismissed the second petition on these grounds. The court explained this anomaly by noting that Ware advanced different bases for distinguishing the two petitions before the Board and the district court. Specifically, the Board took the "real thrust" of Ware's argument to be that the second petition invoked a different subsection of the zoning regulations than the first.

9

J.A. 125. Before the district court, however, Plaintiffs emphasized the differences between the site plans accompanying the two petitions.

We are not persuaded by the district court's reasoning. First, Ware did highlight the differences between the site plans in the administrative proceedings. *See* J.A. 90, 106–10, 113. It was the Board (not Ware) that decided the "real thrust" of Ware's argument was the different zoning provisions invoked by the two petitions. Second, and more importantly, the two site plans are in fact markedly different. The second plan addressed the first one's main deficiencies by moving the parking lot to the center of the Property. This increased the landscaped buffer from zero to 50 feet, which fully complied with the buffer requirements. The second plan also increased the parking lot's setback from zero to between 55 and 72.7 feet, which complied to a much greater extent (and arguably "to the extent possible") with the 75-foot setback requirement. In light of these substantial changes and improvements, we cannot say that the dismissal of Ware's second petition was self-imposed.

Plaintiffs have sufficiently alleged that the dismissal of the second petition imposed a substantial burden on their religious practice. We therefore vacate the district court's dismissal of Plaintiffs' substantial burden claim.[3]

---

[3] The district court did not reach RLUIPA's second prong, which considers whether, despite substantially burdening religious exercise, a government action "is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc–1. As we discuss, Plaintiffs have sufficiently alleged that dismissal of the second petition was motivated by religious animus. Such animus is not a permissible government interest, much less a compelling one. And the dismissal wasn't narrowly tailored to further the finality interests that are normally served by res judicata and (Continued)

B.

Next, we consider the Church's claim that Defendants discriminated against it based on religion or religious denomination in violation of RLUIPA.[4] The district court dismissed this claim, concluding that the Church failed to allege that the Board approved special exceptions to the zoning regulations for similarly situated churches or that its decision was influenced by discriminatory intent.

The Church argues that the district court erred by ignoring allegations that the "Board was knowingly responsive to a hostile community" of bigoted neighbors. J.A. 8 ¶ 5. Defendants respond that the neighbors' discriminatory remarks can't be attributed to them, and that the remarks couldn't have influenced the decision to dismiss the second petition because they were allegedly made during the hearing on the first petition.

RLUIPA prohibits land use regulations that discriminate "on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). In applying RLUIPA's nondiscrimination provision, courts have looked to equal protection precedent. *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 198

---

collateral estoppel because the second petition substantially differed from the first. Therefore, RLUIPA's second prong poses no barrier to Plaintiffs' substantial burden claim at this stage of the case.

[4] The complaint alleges religious discrimination against both the Church and Ware. J.A. 32 ¶ 203. However, RLUIPA's nondiscrimination provision applies only to regulations that discriminate against "any assembly or institution." 42 U.S.C. § 2000cc(b)(2). The district court was therefore correct to dismiss Ware's nondiscrimination claim.

(2d Cir. 2014) (citing *Bethel*, 706 F.3d at 559). Under that precedent, a plaintiff must demonstrate that the government decision was motivated at least in part by discriminatory intent, which is evaluated using the "sensitive inquiry" established in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266–68 (1977).

One factor which this inquiry recognizes as potentially probative of the decisionmaker's intent is the "specific sequence of events leading up to the challenged decision." *Id.* at 267. Departures from normal procedures can suggest that the decision was based on unlawful motives, as can "[s]ubstantive departures . . . particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached." *Id.* (citing *Dailey v. City of Lawton*, 425 F.2d 1037, 1040 (10th Cir. 1970) (finding racial motivation where a city refused to rezone a plot despite present and former city planning directors' testimony that there was no reason not to rezone)).

Particularly relevant to this case, a government decision influenced by community members' religious bias is unlawful, even if the government decisionmakers display no bias themselves. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985); *Marks v. City of Chesapeake*, 883 F.2d 308, 311–13 (4th Cir. 1989). Such impermissible influence may be inferred where expressions of community bias are followed by irregularities in government decision-making. *See Smith v. Town of Clarkton*, 682 F.2d 1055, 1066 (4th Cir. 1982).

Under RLUIPA, a plaintiff need only establish a prima facie claim of religious discrimination, after which the defendant bears the burden of persuasion on all elements

12

of the claim. 42 U.S.C. § 2000cc-2(b); *Chabad Lubavitch*, 768 F.3d at 198. And as with all claims, at the motion to dismiss stage "a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim 'across the line from conceivable to plausible.'" *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570). So long as a plaintiff alleges a plausible prima facie claim of discrimination, a court may not dismiss that claim—even if the defendant advances a nondiscriminatory alternative explanation for its decision, and even if that alternative appears more probable. *Id.*; *see Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) ("The question is not whether there are more likely explanations for the City's action . . . but whether the City's impliedly proffered reason . . . is so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [the plaintiff's] claim of pretext implausible.").

The district court reasoned that the complaint failed to allege disparate treatment because other churches that ultimately received approval are situated on larger lots and have sufficient space for parking. However, RLUIPA's nondiscrimination provision doesn't require a comparison to similarly situated entities. *Chabad Lubavitch*, 768 F.3d at 199. The Church has alleged that the Board's dismissal of Ware's second petition was motivated by religious discrimination. This is enough to make out a prima facie claim of religious discrimination, provided that the Church can establish discriminatory intent.

In this case, the alleged sequence of events leading to the challenged decision is highly probative of Defendants' motives. It is especially significant that irregularities in

13

Defendants' decision-making process followed the neighbors' expressions of animus. *See Town of Clarkton*, 682 F.2d at 1066 (describing a town's unprecedented use of an opinion poll following expressions of racial opposition to a public housing project as a "significant" and "suspect" deviation from the procedural norm).

The first irregularity occurred when the Board denied Ware's first petition even though the County Director of the Department of Planning didn't oppose it. The neighbors who opposed the first petition allegedly made bigoted remarks in the hearing before the ALJ, and seven neighbors also testified during the Board's hearing on the first petition.

In our view, the neighbors' remarks clearly display ethnic bias, and they can plausibly be understood as displaying religious bias too. We recognize that RLUIPA by its terms prohibits discrimination "on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). But we do not attempt to disentangle Plaintiffs' allegations of religious and ethnic bias, at least at the motion to dismiss stage where we must view the alleged facts in Plaintiffs' favor.

The remarks targeted (1) Ware's African heritage and that of other congregants, (2) a Church gathering that (according to the neighbors) involved "dancing" and "hollering," and (3) the fact that the Church "branch[ed] out from another church." J.A. 19 ¶ 108. The first of these topics targets the Church's multicultural identity. The second targets activities conducted at Church gatherings, which we may infer involved religious exercise as defined in RLUIPA. *See* 42 U.S.C. § 2000cc-5(7). The third targets

14

the Church's connection to other churches and denominations—a paradigm example of religious bias.

Plaintiffs also alleged that they "have faced tremendous opposition based on the nature of their ministry and the ethnic background of Reverend Ware and the congregation" and "their status as African immigrants." J.A. 27 ¶ 166–67. Though the Church is expressly "nondenominational," J.A. 9 ¶ 15, and has no religious affiliation except its "associat[ion with] churches in Kenya and the Seychelles," J.A. 10 ¶ 18, Plaintiffs' other allegations are drafted in such a way that we can infer their religious practice is tied to their ethnicity.

Accordingly, when we draw reasonable inferences in Plaintiffs' favor and consider RLUIPA's "very broad protection for religious liberty," *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015) (internal quotation marks omitted), we are convinced that, as alleged, the neighbors displayed the behavior Congress sought to eradicate from zoning decisions. RLUIPA is designed to protect "[c]hurches in general, and new, small, or unfamiliar churches in particular, [from being] frequently discriminated against" in land use regulation, including when "zoning board members or neighborhood residents explicitly offer race or religion as the reason to exclude a proposed church, especially in cases of black churches and Jewish shuls and synagogues." 146 Cong. Rec. S7774 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy).

Following the neighbors' remarks, the Board denied the petition. Although the County Director's statement that she didn't oppose the petition doesn't bind the Board, it is a "factor[] usually considered important" in zoning proceedings, and it "strongly

15

favor[s] a decision contrary to the one reached" by the Board. *Arlington Heights*, 429 U.S. at 267. And although Plaintiffs didn't allege how often the Board departs from the County Director's recommendations, the fact that the Board disagreed with a County official who has relevant expertise and a formal role as the Board's advisor is enough to raise a plausible suspicion of improper motive.

As Defendants rightly point out, the neighbors' remarks before the ALJ and the Board's disagreement with the County Director occurred well before the Board decided to dismiss the second petition. But these events are part of the sequence that led to the challenged decision, and Plaintiffs plausibly alleged that they influenced it. This connection is strengthened by the neighbors' ongoing involvement in the dispute, right up through the dismissal of the second petition.

The second irregularity occurred when the Board granted the neighbors' motion to dismiss the second petition, contrary to the position of its own legal expert, the People's Counsel. The People's Counsel initially sought dismissal based on res judicata and collateral estoppel, but later abandoned this posture. The neighbors continued to seek dismissal on these grounds, and the Board adopted their position. This second irregularity adds further plausibility to the inference that Defendants dismissed the second petition based on improper motives.

We express no opinion on whether the neighbors' animus ultimately swayed the Board's decision to dismiss the second petition. Rather, we conclude only that the complaint plausibly alleges a prima facie claim of religious discrimination.

16

C.

Plaintiffs also appeal the district court's dismissal of their First Amendment free exercise claim and their Fourteenth Amendment equal protection claim, in which they allege (as in their RLUIPA claims) that Defendants substantially burdened their religious exercise and discriminated against them on the basis of religion.

We first must determine the correct standard of review. Under the Supreme Court's free exercise doctrine, a neutral government decision of general applicability is subject to rational basis review, even where it has the incidental effect of burdening religious exercise. *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990). However, a decision whose object "is to infringe upon or restrict practices because of their religious motivation" is not neutral and is subject to strict scrutiny. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 546 (1993). As we explained in Section II.B, Plaintiffs have alleged that the object of the Board's decision was to restrict their use of the Property in response to community opposition to the Church's religious denomination. This allegedly discriminatory motive triggers strict scrutiny.

Similarly, we apply strict scrutiny under the Equal Protection Clause where (as here) the challenged action interferes with a fundamental right. *Bostic v. Schaefer*, 760 F.3d 352, 375 (4th Cir. 2014) (citing *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978)). And "[u]nquestionably, the free exercise of religion is a fundamental constitutional right." *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974); *see also Reaching Hearts Int'l, Inc. v. Prince George's County*, 584 F. Supp. 2d 766, 781 n.9 (D. Md. 2008) (citing

17

*Johnson v. Robison* in applying strict scrutiny to an equal protection claim based on religious discrimination).

A government decision fails strict scrutiny if it is not narrowly tailored to advance a compelling state interest. *Lukumi Babalu Aye*, 508 U.S. at 546. While Baltimore County may have a significant interest in finality and economy that would ordinarily be served by the doctrines of res judicata and collateral estoppel, the dismissal of Ware's second petition isn't narrowly tailored to serve that interest because the second petition didn't seek to revisit the Board's decision about the first petition. We therefore vacate the dismissal of their free exercise and equal protection claims.

D.

Finally, Plaintiffs brought a claim under Article 36 of the Maryland Declaration of Rights, which protects freedom of religion at the state level. The district court had supplemental jurisdiction over this state constitutional claim under 28 U.S.C. § 1367(a) because it formed part of the same case or controversy as Plaintiffs' federal claims. However, after dismissing the federal claims, the district court exercised its discretion under 28 U.S.C. § 1367(c)(3) to dismiss the state constitutional claim.[5] Given our decision on Plaintiffs' federal claims, § 1367(c)(3) no longer provides a basis for dismissing the state constitutional claim. We therefore vacate the dismissal of the state

---

[5] The district court also noted that Maryland state law is unsettled regarding whether Article 36 provides a private cause of action. However, the court didn't expressly invoke 28 U.S.C. § 1367(c)(1), which authorizes it to decline to exercise supplemental jurisdiction over claims that raise novel or complex issues of state law. We express no opinion about whether dismissal under § 1367(c)(1) is appropriate on remand.

18

constitutional claim and remand so that the district court may decide whether to retain supplemental jurisdiction over it.

### III.

For the foregoing reasons, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*