**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 22-2294**

─────────

LISA M.F. KIM, Individually and as Parent and Next Friend of J.K., a minor; WILLIAM F. HOLLAND, and on behalf of all those similarly situated,

Plaintiffs - Appellants,

v.

BOARD OF EDUCATION OF HOWARD COUNTY,

Defendant - Appellee.

------------------------------------

YOUNG AMERICA'S FOUNDATION,

Amicus Supporting Appellants,

FORMER STUDENT MEMBERS OF MARYLAND BOARDS OF EDUCATION,

Amicus Supporting Appellee.

─────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Deborah K. Chasanow, Senior District Judge.  (1:21-cv-00655-DKC)

─────────

Argued:  December 8, 2023                    Decided:  February 28, 2024

─────────

Before DIAZ, Chief Judge, QUATTLEBAUM, Circuit Judge, and Roderick C. YOUNG, United States District Judge for the Eastern District of Virginia, sitting by designation.

─────────

Affirmed by published opinion.  Judge Quattlebaum wrote the opinion, in which Chief Judge Diaz and Judge Young joined.

――――――――――

**ARGUED:**  Michael Francis Smith, SMITH APPELLATE LAW FIRM, Sykesville, Maryland, for Appellants.  Amy L. Marshak, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellee.  **ON BRIEF:** J. Christian Adams, Maureen S. Riordan, Kaylan L. Phillips, PUBLIC INTEREST LEGAL FOUNDATION, INC., Alexandria, Virginia, for Appellants.  Joseph W. Mead, Institute for Constitutional Advocacy and Protection, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellee.  J. William Eshelman, CLARK HILL PLC, Washington, D.C., for Amicus Young America's Foundation.  Mitchell Y. Mirviss, Emily J. Wilson, Elizabeth A. Sines, Baltimore, Maryland, William G. Bolgiano, VENABLE LLP, Washington, D.C., for Amici Former Student Members of Maryland Boards of Education.

――――――――――

2

QUATTLEBAUM, Circuit Judge:

This case concerns the constitutionality of a process for picking a student member of a county school board. The Board of Education of Howard County, Maryland, has eight members. Seven are adults elected by the county's qualified voters in general elections. One is a high-school student chosen by the county's public-school students from the sixth through eleventh grades—in theory, that is. In practice, while the students get to "vote" for one of two final candidates, the school system's employees shepherd students through a multistage selection process, and the board ultimately must confirm the winner. Two parents sued the board, bringing claims under the federal constitution. They assert that letting public-school students pick the student member diminishes adults' voting power in violation of principles derived from the Equal Protection Clause. And one parent claims that the student-member selection process contravenes the Free Exercise Clause since it excludes students who forgo public schools, including those who do so for religious reasons. The district court dismissed the equal protection claim after determining that the student member is not elected in a constitutional sense. At the same time, the district court dismissed the free exercise claim, in part because the process for choosing the student member excluded religious and nonreligious students alike, making the rule neutral and generally applicable. We affirm the dismissal of both claims.

3

I.

A.

Students have long served on school boards across the United States. By one 2022 report, nearly half of the states permit students to serve on boards of education. *See generally* Celina Pierrottet, *Engaging Youth in Education Policymaking*, Pol'y Update (Nat'l Ass'n of State Bds. of Educ., Alexandria, Va.), Aug. 2022, at 1. For its part, Maryland has allowed students on its county school boards beginning in the 1970s. Brief of Former Student Members of Maryland Boards of Education as Amici Curiae in Support of Defendant-Appellee, at 7. Now students serve on the school boards of nearly all counties in the state.[1]

The county involved in this case, Howard County, has allowed a student member to serve on its board of education since 2007. *See* 2007 Maryland Laws Ch. 611 (H.B. 513). Like all of Maryland's county boards of education, Howard County's board of education controls "educational matters that affect the count[y]." Md. Code, Educ. § 4-101(a). Those matters include, for instance, determining education policies and rules of conduct for the

---

[1] *See* Md. Code, Educ. § 3-201 (Allegany County); *id.* §§ 3-2A-01, 3-2A-05 (Anne Arundel County); *id.* § 3-108.1 (Baltimore City); *id.* §§ 3-2B-01, 3-2B-05 (Baltimore County); *id.* § 3-301 (Calvert County); *id.* § 3-3A-02 (Caroline County); *id.* § 3-401 (Carroll County); *id.* § 3-4A-01 (Cecil County); *id.* § 3-501 (Charles County); *id.* § 3-5A-01 (Dorchester County); *id.* § 3-5B-01 (Frederick County); *id.* § 3-601 (Garrett County); *id.* § 3-6A-01 (Harford County); *id.* § 3-701 (Howard County); *id.* § 3-801 (Kent County); *id.* § 3-901 (Montgomery County); *id.* § 3-1002 (Prince George's County); *id.* § 3-10A-01 (Queen Anne's County); *id.* § 3-1101 (St. Mary's County); *id.* § 3-12A-01 (Talbot County); *id.* § 3-1401 (Worcester County).

4

Howard County Public School System ("HCPSS"). *Id.* § 4-108. Howard County's board of education is composed of eight members. *See id.* § 3-701.

Seven members are adults chosen during general elections. Voters in each of the county's five districts elect one member from their district, and voters across the county elect two at-large members. *Id.* § 3-701(a)(2), (c)(1). These seven elected members must be adult residents and registered voters of Howard County, and they serve four-year, staggered terms. *Id.* § 3-701(b)(1), (d)(1)–(2).

The remaining member is a high-school student. This last member must be a "regularly enrolled junior or senior year student from a Howard County public high school." *Id.* § 3-701(f)(1). In contrast to the elected members, the student member serves a one-year term. *Id.* § 3-701(f)(2). While the student member generally "has the same rights and privileges as an elected member," the student member cannot vote on many matters listed in the statute. *Id.* § 3-701(f)(5), (f)(7).[2] The student also cannot attend closed sessions

---

[2] Under § 3-701(f)(7), the student member cannot vote on matters involving:

(i) Geographical attendance areas under § 4-109 of this article; (ii) Acquisition and disposition of real property and matters pertaining to school construction under § 4-115 of this article; (iii) Employment of architects under § 4-117 of this article; (iv) Donations under § 4-118 of this article; (v) Condemnation under § 4-119 of this article; (vi) Consolidation of schools and transportation of students under § 4-120 of this article; (vii) Appointment and salary of a county superintendent under §§ 4-201 and 4-202 of this article; (viii) Employee discipline and other appeals under § 4-205(c) of this article; (ix) Budgetary matters under Title 5 of this article; (x) Appointment and promotion of staff under § 6-201 of this article; (xi) Discipline of certificated staff under § 6-202 of this article; (xii) Collective bargaining for certificated employees under Title 6, Subtitle 4 of this article; (xiii) Collective bargaining for noncertificated employees under Title 6, Subtitle 5

pertaining to any of those matters unless invited by a majority of the board. *Id.* § 3-701(f)(6).

The single student member is chosen by a process different from the seven elected adult members. The Maryland statute governing the establishment of Howard County's board of education directs the board to approve a "nomination and election process for the student member." *Id.* § 3-701(f)(3)(i). The statute requires that process to "provide[] for the replacement of one or both of the final candidates if one or both of them are unable, ineligible, or disqualified to proceed in the election." *Id.* § 3-701(f)(3)(ii). The statute adds that the process must "allow for any student in grades 6 through 11 enrolled in a Howard County public school to vote directly for one of the two student member candidates." *Id.* § 3-701(f)(3)(iii). Ultimately, the statute specifies that the student member shall serve "subject to confirmation of the election results by the county board." *Id.* § 3-701(f)(2).

In response to these statutory dictates, the board developed a policy and implementation procedures to flesh out the selection process.[3] Students interested in

of this article; and (xiv) Student suspension and expulsion under § 7-305 of this article.

[3] All parties observe that, after the board moved to dismiss, it revised its policy and implementation procedures. Those procedures, which are not contained in the Joint Appendix, are "public record[s]." *Martin v. Duffy*, 858 F.3d 239, 253 n.4 (4th Cir. 2017). As such, we may take judicial notice of them. *Id.* (citing Fed. R. Evid. 201(d)). From our review, the revised procedures largely track their predecessors. As for differences, most relevantly, the procedures elaborate on "campaign expectations and candidate preparedness." *See* HCPSS, Policy 2010 Implementation Procedures (effective Jan. 13, 2022), https://policy.hcpss.org/2000/2010/implementation [https://perma.cc/V7N5-HZVD]. Those revisions spell out campaign rules, require candidates and their parents to review those rules with HCPSS employees and provide a process for disciplining or

becoming the student member must apply. The application is developed by the Howard County Association of Student Councils ("HCASC"), a body composed of student government representatives from HCPSS schools and advised by an HCPSS employee. That employee, the HCASC Advisor, reviews submitted applications for completeness and accuracy.

The field of applicants is then narrowed. Each Howard County public middle or high school convenes a committee—made up of the school principal, a student-government advisor or counselor and three students selected by the principal—to select a handful of students to serve as the school's delegates at a county-wide convention at which two finalists, plus alternates, are chosen. The delegates are trained by an HCASC advisor.

Then the two finalists proceed to what is labeled an "election." J.A. 35. They submit campaign materials—regulated by HCASC guidelines—to school employees, who make them available to students. Afterwards, "student[s] in grades 6 through 11 enrolled in a Howard County public school . . . vote directly for one of the two student member candidates." Md. Code, Educ. § 3-701(f)(3)(iii). After the votes are tallied, the county superintendent certifies the winner if the winner "was elected in accordance with all policies and procedures." J.A. 35. With the superintendent's certification, the student-member elect may take office "subject to confirmation of the election results by the county board." Md. Code, Educ. § 3-701(f)(2).

---

disqualifying candidates who do not comply with the rules. *See id*. The parties focus their challenge on the prior policy and procedures, which took effect in July 2017. Following the parties' lead, we too focus on the prior policy and procedures, which were the ones attached to the parents' complaint.

B.

In 2021, fourteen years after Howard County began using this basic process, two adult residents and registered voters of Howard County, William Holland and Lisa Kim, sued the school board under 42 U.S.C. § 1983. While Holland's children attend Howard County public schools, Kim also sued on behalf of her minor son, J.K., who attends a private Catholic school in the county. Holland and Kim also sought to represent a class of Howard County residents unable to vote for the student member. Both parents alleged that Howard County's method for choosing the student member violates the Fourteenth Amendment's Equal Protection Clause, contending that the process grants certain students greater voting power than adults and that the student member effectively represents a malapportioned electoral district composed of HCPSS students. In addition, Kim challenged the method under the First Amendment's Free Exercise Clause, arguing that it excludes students who choose not to attend public schools for religious reasons. As relief, the parents asked the district court to declare that "procedures leading to the seating of a student Board member pursuant to Md. Code, Ed. Art. §3-701" violate both federal equal protection and free exercise principles. J.A. 21–22.[4]

---

[4] The board's recent revisions to its policy and implementation procedures do not moot the parents' claims. Section 3-701, which requires the board to permit HCPSS students to vote for the student member, remains on the books, and the revised procedures implementing that statute continue to exclude parents and non-public-school students from that process. Still excluded, the parents maintain a concrete interest in this matter. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012))); *see also N.Y. Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 140 S. Ct. 1525, 1533–35 (2020) (Alito, J., dissenting).

While the parents moved for class certification, the board moved to dismiss the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5] Exercising jurisdiction over this federal-question controversy, 28 U.S.C. § 1331, the district court stayed the federal case pending the Supreme Court of Maryland's decision in *Spiegel v. Board of Education of Howard County*, 281 A.3d 663 (Md. 2022),[6] which involved a challenge under Maryland's constitution to Howard County's student-member selection process. The Maryland Supreme Court upheld the process. *Id.* at 674.

After a round of supplemental briefing on *Spiegel*, the district court considered the board's motion to dismiss. The district court treated the parents' equal protection claim as relying on the one-person, one-vote principle, which generally requires states to give equal weight, as far as is practicable, to the vote of every qualified voter "in situations involving elections," *Hadley v. Junior Coll. Dist. of Metro. Kan. City*, 397 U.S. 50, 54 (1970). The court held that principle inapplicable, deeming the student-member selection process to be "basically appointive," not elective. *Kim v. Bd. of Educ. of Howard Cnty.*, 641 F. Supp. 3d

---

[5] Invoking the doctrine of laches, the board argued to the district court that the parents' equal protection claim was untimely, noting that the challenged statute had been on the books since 2007. The parents responded that they sought to redress an ongoing violation of both their equal protection and free exercise rights, asserting that, every time a new student member is chosen, their injuries are reopened. They added that they sued just after J.K. entered the sixth grade, which would have qualified him to participate in the student-member selection process had he enrolled in a public school. The district court did not reach these timeliness arguments, and, since the board does not renew them on appeal, neither do we.

[6] In 2022, after the *Spiegel* decision was published, Maryland changed the name of its highest court from the Court of Appeals of Maryland to the Supreme Court of Maryland. We use the current name.

9

223, 230–35 (D. Md. 2022).[7] As for Kim's free exercise claim, the district court found no burden on religious exercise. Alternatively, the district court characterized the selection method as neutral and generally applicable since it operates against all non-public-school students, regardless of their reasons for not attending public school. On either ground, the district court held that the process for selecting the student member did not run afoul of free exercise.

Accordingly, the district court dismissed both constitutional claims. And it denied as moot the parents' motion for class certification. The parents timely appealed the dismissal of their claims—a final decision falling within our appellate jurisdiction under 28 U.S.C. § 1291.

II.

We review de novo the dismissal of the parents' complaint for failure to state a claim. *See Alive Church of the Nazarene, Inc. v. Prince William Cnty.*, 59 F.4th 92, 101 (4th Cir. 2023). To survive dismissal, "a complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To state a plausible constitutional claim, the parents try to reach heightened judicial scrutiny by two

---

[7] The district court also determined that the parents could not rely on *Bush v. Gore*, 531 U.S. 98 (2000), which applied the one-person, one-vote principle to the recounting of votes in an election of presidential electors, *id.* at 104–05 ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."). On appeal, the parents do not pursue any arguments predicated on *Bush v. Gore*.

routes: equal protection and free exercise. Both avenues dead end with rational basis review.

A.

Both Holland and Kim invoke principles derived from the Equal Protection Clause that govern certain popular elections. The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Accordingly, state actions that disparately treat similarly situated people must withstand constitutional scrutiny. *See Plyler v. Doe*, 457 U.S. 202, 216 (1982) ("The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920))). But the level of that scrutiny varies. If the disparate treatment involves a fundamental right or suspect classification, the state action must survive exacting judicial scrutiny. *See Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626–28, 628 n.9 (1969). Otherwise, the disparity need only rationally relate to some legitimate state interest. *See Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.*, 410 U.S. 719, 730 (1973).

One fundamental right demanding close scrutiny is qualified voters' "right to participate in elections on an equal basis" with one another. *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972); *see also Reynolds v. Sims*, 377 U.S. 533, 562 (1964); *Kramer*, 395 U.S. at 626. That said, "the right to vote, per se, is not a constitutionally protected right . . . ." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 36 n.78 (1973). The federal constitution "does not confer the right of suffrage upon any one." *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9 (1982). Accordingly, "States can within limits specify the

11

qualifications of voters in both state and federal elections." *Gray v. Sanders*, 372 U.S. 368, 379 (1963).

The federal constitution imposes several such limits. For instance, the Fifteenth Amendment prohibits states from denying or abridging voting rights "on account of race, color, or previous condition of servitude." U.S. Const. amend. XV. The Nineteenth Amendment prohibits states from denying or abridging voting rights "on account of sex." U.S. Const. amend. IXX. In turn, the Fourteenth Amendment has been interpreted to prevent states from restricting the franchise "on grounds other than residence, age, and citizenship" unless the state "can demonstrate that the classification serves a compelling state interest." *Hill v. Stone*, 421 U.S. 289, 297 (1975); *see also Kramer*, 395 U.S. at 627 ("[I]f a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest.").

And "once the class of voters is chosen and their qualifications specified," equal protection demands giving all but equal weight to the vote of every qualified voter. *Hadley*, 397 U.S. at 59 (quoting *Gray*, 372 U.S. at 381); *see also Avery v. Midland Cnty.*, 390 U.S. 474, 484–85 (1968) (holding that a qualified voter in a local election had a right to have his vote counted with substantially the same weight as those of other qualified voters when the local officials exercised "general governmental powers over the entire geographic area served by the body"). Branded as "one person, one vote," *Reynolds*, 377 U.S. at 558 (quoting *Gray*, 372 U.S. at 381), this principle has yielded the following "general rule":

12

> whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.

*Hadley*, 397 U.S. at 56; *see also Rodriguez*, 457 U.S. at 10 (noting that when a state has provided for an election, "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction" (quoting *Dunn*, 405 U.S. at 336)).[8]

This general rule undergirds the parents' equal protection claim. The parents complain that Howard County—by allowing only HCPSS students to vote for the student member—dilutes and malapportions the voting power of eligible adult voters residing in the county, like themselves. In terms of vote dilution, the parents assert that eighteen-year-old HCPSS students can vote for the student member in addition to adult board members, allowing those select students to vote for more board members than other voters in the county. In terms of malapportionment, the parents complain that the at-large adult members of the board represent all of Howard County, while the student member represents only the smaller number of HCPSS students eligible to vote for that member, providing those

---

[8] Like many general rules, this one bears an exception. Equal participation among otherwise qualified voters is not required when a state sets up a special unit with a limited purpose and a disproportionate effect on certain constituents. *See Salyer*, 410 U.S. at 728–30; *Ball v. James*, 451 U.S. 355, 370–71 (1981). Since the district court here did not reach this exception, neither do we.

students with an extra representative on the board. Under either framing, the parents' equal protection claim relies on one person, one vote to obtain close judicial scrutiny.

The one-person, one-vote principle, however, applies only to popular elections of officials who perform governmental functions. *See Vander Linden v. Hodges*, 193 F.3d 268, 273, 275 (4th Cir. 1999) (interpreting *Hadley*, 397 U.S. at 56); *DeJulio v. Georgia*, 290 F.3d 1291, 1295 (11th Cir. 2002); *Morris v. Bd. of Estimate*, 707 F.2d 686, 689 (2d Cir. 1983). *Hadley* itself clarifies that "where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws." *Hadley*, 397 U.S. at 58 (citing *Sailors v. Bd. of Educ.*, 387 U.S. 105 (1967)). Thus, the one-person, one-vote principle plays no role for "basically appointive rather than elective" processes when an election is not constitutionally required. *Sailors*, 387 U.S. at 109, 111. Concluding that the board "basically appoint[s]" the student member, the district court rejected the parents' one-person, one-vote claim. *Kim*, 641 F. Supp. 3d at 231–32.

We agree. Howard County's process for selecting the student member of the county's board of education does not constitute a popular election that requires compliance with the one-person, one-vote principle. In reaching that conclusion, we ask two questions: first, whether the federal constitution permitted Howard County to appoint a member of its

14

school board, and second, whether Howard County established such an appointive process.[9]

The first question is straightforward. The federal constitution allows states to appoint, rather than elect, members of county school boards. In *Sailors v. Board of Education*, 387 U.S. 105 (1967), the Supreme Court found no constitutional infirmity in a state statute specifically "authorizing appointment rather than election of the members of a county school board." *Rodriguez*, 457 U.S. at 9–10 (citing *Sailors*). The Supreme Court recognized in *Sailors* that "[v]iable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions." *Sailors*, 387 U.S. at 110–11. And it found "nothing in the Constitution to prevent experimentation." *Id.* at 111. As far as the federal constitution is concerned, "a State can appoint local officials or elect them or combine the elective and appointive systems." *Id.*; *see also Kramer*, 395 U.S. at 629 ("States do have latitude in determining whether certain public officials shall be selected by election or chosen by appointment and whether various questions shall be submitted to the voters."); *Fortson v. Morris*, 385 U.S. 231, 234 (1966) ("There is no provision of the United States Constitution or any of its amendments which either expressly or impliedly dictates the method a State must use to select its Governor."); *Rodriguez*, 457 U.S. at 9 (stating that the Constitution does not "compel[] a fixed method of choosing state or local officers or representatives");

_____

[9] Since we hold that the student member is not chosen by popular election, we need not and do not assess whether the student member performs governmental functions, another prerequisite to applying the one-person, one-vote principle.

15

Richard Briffault, *Who Rules at Home?: One Person/One Vote and Local Governments*, 60 U. Chi. L. Rev. 339, 405–08 (1993).[10] Consequently, Howard County's school board could permissibly combine its elective system for selecting seven members with an appointive system for selecting one student member.

The dispositive question then, which concededly is less straightforward, is whether it did. To answer that question, we must understand what amounts to an appointment. *Sailors* provides an example. In *Sailors*, the Supreme Court held that a county-level school board in Michigan was "basically appoint[ed]." *Sailors*, 387 U.S. at 109. In a footnote, the Court explained that the county school board was "not determined, directly or indirectly, through an election in which the residents of the county participate." *Id.* at 109 n.6. Rather, district "residents" elected members of district-level school boards, which, in turn, selected delegates who would cast votes for county-level school board candidates. *Id.* at 106–07, 106 n.1, 109 n.6. The delegates were not beholden to the preferences of those residents, the

---

[10] To be sure, *Sailors* reserved the question of "whether a State may constitute a local legislative body through the appointive rather than the elective process," having determined that the county board of education involved in that case "performs essentially administrative functions." *Sailors*, 387 U.S. at 109–10. But the Supreme Court seems to have withdrawn from distinguishing between legislative and administrative officials. *See Hadley*, 397 U.S. at 55–56 ("It has also been urged that we distinguish for apportionment purposes between elections for 'legislative' officials and those for 'administrative' officials[.] Such a suggestion would leave courts with an equally unmanageable principle since governmental activities 'cannot easily be classified in the neat categories favored by civics texts,' and it must also be rejected." (quoting *Avery*, 390 U.S. at 482) (internal citation omitted)); *Rodriguez*, 457 U.S. at 9–12, 10 n.9 (upholding a process allowing political parties to fill vacancies in Puerto Rico's legislature by appointment, while ostensibly declining to resolve the question reserved in *Sailors*); *see also* Briffault, *supra*, at 406 n.259.

"electors" of the district-level boards. *Id.* at 106 n.1, 109 n.6. The delegates, not "the people of the county," picked the county school board. *Id.* at 109 n.6. So, *Sailors* teaches that when the government has not handed the decision over to "the people," a popular election has not taken place. Rather, the decision is basically appointive, and thus, the one-person, one-vote principle does not apply.[11]

Howard County's board of education has not surrendered the decision of who serves as its student member. Instead, the board so controls the process for selecting the student member that the process is basically appointive. By statute, the board must "approve" the process for choosing the student member. Md. Code, Educ. § 3-701(f)(3)(i). Exercising that authority, the board developed the implementation procedures attached to the

---

[11] If instead the government had relinquished the decision, a subsequent analytical step might assess the identity of those tasked with deciding. The parents contend that a popular election transpires whenever members of the public—even if exclusively those not typically qualified to vote—are invited to cast ballots. In response, the board and the district court would require participation by the "qualified voter" base, that is, those generally qualified by age, residence and citizenship to vote. *Kim*, 641 F. Supp. 3d at 231. Our review of the case law does not provide a definitive answer. *See Sailors*, at 106–07, 106 n.1, 109 & n.6 (referring to "residents," "electors" and "people"); *Kramer*, 395 U.S. at 622, 628–29 (treating a process involving residents otherwise eligible to vote in state and federal elections to be an election, without holding that such involvement is required). *Compare ARC Students for Liberty Campaign v. Harris*, 732 F. Supp. 2d 1051, 1060 (E.D. Cal. 2010) (ruling that "an election is popular when a legislature defines a class of voters," regardless of "how the legislature chooses a class"), *with Bradley v. Work*, 916 F. Supp. 1446, 1456 (S.D. Ind. 1996) ("A popular election is one in which all registered voters meeting the age and residency requirements may vote."). Perhaps, as the board submits, general voting qualifications must ultimately be considered to determine whether a process for picking public officers amounts to a popular election sufficient to trigger the one-person, one-vote principle. Perhaps not. But for today, we need not answer that question, which presupposes that the government has in fact tasked any members of the public with deciding. In Howard County, the government has effectively reserved the decision for itself, so it has not surrendered the decision to "the people," however defined.

17

complaint. HCPSS employees oversee each phase of the multistep process set forth in those procedures. A Howard County employee, the HCASC Advisor, reviews all applications submitted by students interested in running. School principals dominate the committees that pick delegates to represent each school at the convention for nominating the finalists— in addition to serving on a given school's committee, a school's principal picks three of the committee's four remaining members; the only committee member not picked by the principal is another HCPSS employee. After the convention, school employees sift through the finalists' campaign materials, which must comply with HCASC guidelines. After the students have picked between the two finalists filtered by the county, the winner can assume office only after the superintendent has certified that the winner was elected in compliance with "all policies and procedures" and only after the board has accepted the superintendent's recommendation. J.A. 35; *see* Md. Code, Educ. § 3-701(f)(2) ("The student member shall serve . . . subject to confirmation of the election results by the county board.").[12]

What's more, in assessing whether the board has handed the decision to the people, the school setting matters. Those who "vote" for one of the two finalists are sixth through eleventh grade students. Nearly all are too young to vote in Maryland elections. *See* Md. Const. art. I, § 1 ("[E]very citizen of the United States, of the age of 18 or upwards, who is

---

[12] We acknowledge that certifying and confirming the results of a selection process might not by themselves render the process basically appointive. However, certification and confirmation provide yet additional examples of board oversight at yet another phase of the multistep process for choosing the student member. While not dispositive, this additional layer of board control remains relevant.

18

a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which the citizen resides at all elections to be held in this State."). Howard County's process for allowing its young students to participate in selecting the student member does not prematurely enfranchise them; rather, it provides a real-life civics lesson about the democratic process aimed at preparing the schoolchildren for when they will qualify to vote in elections held in Maryland. And from beginning to end, educators—who hold positions of power over their pupils—hold students' hands throughout the process. This educator-student relationship accentuates the board's dominance.[13]

The parents resist with three primary arguments. None persuade us.

First, the parents contend that appointments require appointers who are themselves politically accountable. But Supreme Court precedent says otherwise. *See Rodriguez*, 457 U.S. at 12–14 (allowing a political party to make an interim "appointment," despite the challengers' argument that appointment power must be vested in an elected official); *see also Kirk v. Carpeneti*, 623 F.3d 889, 898–900 (9th Cir. 2010) (rejecting the argument that only popularly elected officials or their appointees can make appointments). Limiting appointment power to those directly accountable to voters may or may not be sound policy, but it is certainly not a constitutional mandate.

---

[13] True, government bodies often supervise steps of popular elections to which the one-person, one-vote principle undisputedly applies. But that supervision does not approach the level of control the board wields over the middle- and high-school students here. Far from specifying ballot requirements and the like, Howard County's board of education, through its discretion and employees, controls the procedure for picking its student member from beginning to end and confirms the winner.

19

Second, the parents argue that the selection process cannot be appointive because whatever role the board plays along the away, in the end, students cast ballots. But a process does not become a popular election simply because preferences are tallied by a vote. *See Rodriguez*, 457 U.S. at 5 n.3, 12–14 (treating a process for picking an interim legislator as an appointment even though the political party filled the seat in a method resembling a closed primary); *Sailors*, 387 U.S. at 109 & n.6, 111 (treating method as "basically appointive" even though delegates "cast [] votes" for the county board). The critical inquiry is whether the state has surrendered the selection. And here, it has not. In fact, despite their present position that the board has handed the decision to students, the parents' allegations and arguments before the district court undermine that pivot on appeal. The parents' complaint alleges that the Maryland statute "allows a school Board employee to control every aspect of determining who obtains the nomination for the Student Member seat, essentially giving HCPSS a seat on [the] Board." J.A. 19. Responding to the board's motion to dismiss, the parents represented that "the procedures for electing the Student Member provide County employees with effective control of both the nomination, election and oversight of a Howard County Board of Education Member . . . ." D. Ct. ECF No. 20-1, at 4. And even in this appeal, the parents' amicus argues that school administrators and the board control the selection process enough to be able to "handpick student members solely on [the] basis of congenial viewpoints." Brief of Young America's Foundation as Amicus Curiae in Support of Plaintiffs-Appellants, at 14. Thus, it appears that even the parents do not believe that the students choose the board's student member.

20

Third, the parents point to labels in the pertinent Maryland statute. True, the statute refers to the process as an "election." Md. Code, Educ. § 3-701(f). But common parlance does not control the process's fundamental character. The Supreme Court of Maryland made that much clear in *Spiegel v. Board of Education of Howard County*, 281 A.3d 663 (Md. 2022). In *Spiegel*, two parents—disappointed by the student member's vote against resuming in-person lessons during the Covid-19 pandemic—sued Howard County's school board, asserting that the Maryland statute providing for the student member's "election" by HCPSS students violated their state constitutional voting rights. *Id.* at 664–65. Despite the statute's use of the term "election," the Maryland Supreme Court held that "the election by students, including minor students, of a student member is not subject to the election and voting provisions of the Maryland Constitution," emphasizing that the statute created two different types of members—a student member and "elected members"—each chosen by different processes. *Id.* at 668–70. The parents also invoked *Hadley* to argue that selecting the student member implicated voting rights under Maryland's constitution. *Id.* at 670. Maryland's court of last resort determined that, "to the extent that *Hadley* has any relevance" to the Maryland constitutional question, *Hadley*'s "sentiments" favored upholding § 3-701, since Maryland's legislature chose "not to use the general election process to select the student member." *Id.* at 671.

*Spiegel*'s impact warrants clarification. *Spiegel* dispositively interprets the Maryland statute. *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."). Meanwhile, federal law

21

governs whether the process provided in the Maryland statute, as interpreted in *Spiegel*, amounts to a popular election triggering federal voting rights. *See Vander Linden*, 193 F.3d at 276 ("[I]t is well established that equal protection review of a state practice is unaffected by the legality of the practice under state law."); *see also Smith v. Allwright*, 321 U.S. 649, 664 (1944) (stating that a citizen's right to vote "is not to be nulified [sic] by a state through casting its electoral process in a form which permits a private organization to practice racial discrimination in the election"). *Spiegel* teaches that Howard County's process for selecting its student member is not an election triggering heightened constitutional scrutiny simply because the Maryland statute refers to the process as an "election."

Ultimately, the county board's command over the process demonstrates that it is not an election in the federal constitutional sense. The board has retained control over who serves as the student member, making that choice "basically appointive rather than elective." *See Sailors*, 387 U.S. at 109. The allegations in the complaint and the procedures attached to it demonstrate the board's heavy hand in picking the student member. The board has used its statutory authority to design a process in which school employees direct the picking of the two finalists, control those finalists' campaign materials and decide whether to certify the winner. And then by statute, the board must confirm the result before the student-member elect can serve. *See* Md. Code, Educ. § 3-701(f)(2). This board-controlled process invites young students not to participate in a popular election but to join a civics lesson to prepare them to vote in the future, or, as the complaint put it, "a process more closely resembling that of filling a homecoming court or student council." J.A. 8. Howard County's board was within its rights to choose such an appointive method. *See Sailors*,

22

387 U.S. at 111; *Kramer*, 395 U.S. at 629; *Rodriguez*, 457 U.S. at 9. Consequently, the one-person, one-vote principle "has no relevancy." *See Sailors*, 387 U.S. at 111; *see also Hadley*, 397 U.S. at 58. Without that principle, the Equal Protection Clause does not provide the parents with a path to heightened scrutiny.

B.

Pursuing an alternative route, Kim, but not Holland, turns to the Free Exercise Clause. The Free Exercise Clause—made applicable to the states via the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)—provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. To implicate the Free Exercise Clause, state action must burden religious exercise. *See Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021); *Braunfeld v. Brown*, 366 U.S. 599, 605–07 (1961) (plurality) (holding that a law requiring businesses to close on Sundays did not burden Jewish plaintiffs' Saturday-Sabbath observance even though it might have made that religious practice more expensive). Even so, "laws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton*, 141 S. Ct. at 1876 (citing *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878–82 (1990)). Such laws are subject instead to rational basis review. *Alive Church of the Nazarene*, 59 F.4th at 108; *see also Smith*, 494 U.S. at 879–80.

Kim complains that her son, who attends a Catholic private school, cannot participate in the student-member selection process. Kim argues that Howard County's method of selecting its board of education student member burdens religious exercise by

23

indirectly coercing students to choose between religious education outside of public school and participating in picking the student member. She continues that the selection process is administered in a way that disadvantages religion such that the process is not both neutral and generally applicable, triggering strict scrutiny.[14] The district court rejected both assertions, concluding that Maryland's law does not burden religious exercise and that it is neutral and generally applicable. Regardless of whether the law burdens religious exercise, a question we do not reach, it is neutral and generally applicable.

As for neutrality, the government does not act neutrally when it "proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton*, 141 S. Ct. at 1877; *see also Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1730–32 (2018); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993). Conversely, government action is neutral if it "has no object that infringes upon or restricts practices *because* of their religious motivation." *Alive Church of the Nazarene*, 59 F.4th 92 at 108 (cleaned up); *see also Hines v. S.C. Dep't of Corr.*, 148 F.3d 353, 357 (4th Cir. 1998) ("A law is considered neutral if it proscribes conduct without regard to whether that conduct is religiously motivated or not."). Maryland's law does not consider religious motivation but depends on public school enrollment. To the extent the law has an effect of excluding religious students, it does so

---

[14] In the final footnote of her appellate brief, Kim mentions another path to strict scrutiny. She asserts that the selection process implicates constitutional rights having to do with voting or educating one's child, in addition to free exercise. But dropping a few conclusory lines in a footnote does not allow for meaningful review. In fact, it forfeits the argument. *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009).

"in spite of" and not "because of" those students' religious reasons for forgoing public education. *See Alive Church of the Nazarene*, 59 F.4th 92 at 108. The law is neutral.

It is also generally applicable. A law is not generally applicable "if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877 (cleaned up); *see also Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67–68 (2020) (per curiam). Maryland's law makes no distinction between religious and secular. It bars non-public-school students, religious and nonreligious alike, from choosing or serving as the student member. *See* Md. Code, Educ. § 3-701(f)(1), (f)(3)(iii). It does not vest school administrators with authority to allow some non-public-school students to vote. *See id.* § 3-701(f)(3)(iii). In short, limiting the choice of the student member to public school students is a neutral and generally applicable government action.

That conclusion is unaltered by the Supreme Court's recent decisions involving grant programs expressly excluding religious schools. *See generally Carson ex rel. O.C. v. Makin*, 596 U.S. 767 (2022); *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2255 (2020); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017). The programs in those cases explicitly barred public funds from going to religious actors "solely because of their religious character." *See Carson*, 596 U.S. at 780 (holding that a Maine program, which provided tuition assistance to parents in remote regions without public schools, violated free exercise since the assistance could go only to "nonsectarian"

25

schools); *Espinoza*, 140 S. Ct. at 2255 (finding a free exercise violation where a Montana program provided scholarships to private schools but not religious schools based on the state constitution's barring of aid to the latter); *Trinity Lutheran*, 582 U.S. at 455, 462 (holding that a Missouri program to help nonprofits pay for playground resurfacing violated free exercise by disqualifying any organization "owned or controlled by a church, sect, or other religious entity"). These cases stand only for the point that religious schools cannot be excluded from grant programs solely because of their religious character. States do not need to include private schools, but if they do, states "cannot disqualify some private schools solely because they are religious." *Carson*, 142 S. Ct. at 779–80 (quoting *Espinoza*, 140 S. Ct. at 2261).

Howard County does not let any private schools, religious or nonreligious, participate in selecting the board of education student member. The process does not exclude students because of their religious exercise. Rather, it excludes students who choose not to attend public school for whatever reason. Strict scrutiny plays no role in judging this textbook neutral and generally applicable selection criterion.

## C.

For Holland's and Kim's constitutional claims, all roads end with rational basis review. Rational basis review "requires merely that the law at issue be 'rationally related to a legitimate governmental interest.'" *Canaan Christian Church v. Montgomery Cnty.*, 29 F.4th 182, 199 (4th Cir. 2022) (quoting *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 561 (4th Cir. 2013)); *see also San Antonio Indep. Sch. Dist.*, 411 U.S. at 40. The party challenging the law bears the burden of negating

26

"any reasonably conceivable state of facts that could provide a rational basis" for the law. *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)); *see also McGowan v. Maryland*, 366 U.S. 420, 426 (1961) ("A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.").

Holland and Kim have made no effort to carry that burden. And for good reason— any such effort would have proven futile. Empowering HCPSS students to help select from among themselves a representative to serve a yearlong term on the county's school board is not "wholly irrelevant" to achieving Maryland's possible interests in making room for student perspectives on its school boards or providing students with civics training. *See Salyer*, 410 U.S. at 730–31 (quoting *Kotch v. Bd. of River Port Pilot Comm'rs for Port of New Orleans*, 330 U.S. 552, 556 (1947)). Howard County's method of choosing its board of education student member survives rational basis review.

## III.

Without the benefit of heightened judicial scrutiny, the parents have failed to state a viable claim under either the Equal Protection Clause or the Free Exercise Clause under rational basis review. Accordingly, the district court's judgment dismissing those claims is

*AFFIRMED*.

27